## SNYDER v. THE STATE.

CRIMINAL LAW.—*Indictment.*—*Murder.*—In this State, an indictment for murder in the first degree must aver, that the killing was purposely done.

SAME.—*Motion to Require Prosecutor to Elect Between Counts.*—*Judicial Discretion.*—It is within the discretion of the court to refuse to compel the prosecuting attorney to elect on which of two counts in an indictment for murder in the first degree he will put the defendant on trial.

SAME.—*Evidence.*—*Admissions.*—*Statement of Defendant Before Coroner's Inquest.*—On the trial of an indictment for murder, a writing or statement signed by the defendant as his statement, or evidence given by him as a witness before the coroner's inquest, held over the body of the deceased, is admissible in evidence, on behalf of the State, over the defendant's objection, unless it be shown to have been made by the defendant under the influence of fear produced by threats. And whether the coroner's jury was legally organized or not, would not affect the question of the admissibility of such a statement freely made by the defendant.

SAME.—*Instruction to Jury.*—On the trial of an indictment, the refusal of the court to instruct the jury, that, if there was a reasonable doubt in their minds as to the establishment by the evidence of any material fact necessary to convict the defendant, they should acquit him, was not cured by a general instruction given, that the defendant was by law presumed innocent until proved guilty beyond a reasonable doubt.

SAME.—*Statement to Jury of Material Facts to be Proved.*—Where, on the trial of an indictment, the court in charging the jury proposed to call their attention to the material facts in the indictment which must be proved, and did not mention all such material facts, the instruction was erroneous.

SAME.—*Instruction Assuming Fact.*—Where, on the trial of an indictment for murder by poisoning, the court, in its charge to the jury, directed "attention to the question, whether the defendant gave" the deceased poison "with a criminal intent;"

*Held,* that this was error, because the jury might understand the instruction to assume that the defendant gave the deceased poison, and left to the jury the question of intent alone.

SAME.—*Reasonable Doubt.*—An instruction to the jury, on the trial of a criminal action, which is calculated by its terms to leave the impression upon the minds of the jury, that the State has made out her case, and that, unless the evidence of the defendant raises in their minds a reasonable doubt, they should convict, is erroneous.

From the Tipton Circuit Court.

*J. Green* and *D. Waugh,* for appellant.

*J. F. Vail,* Prosecuting Attorney, *R. B. Beauchamp, N. R. Overman* and *G. H. Gifford,* for the State.

PERKINS, J.—Indictment for murder in the first degree; conviction; motion for a new trial overruled, and final judgment against the defendant.

The statutory definition of murder in the first degree is as follows:

"Sec. 2.  If any person of sound mind shall purposely and with premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill any human being, such person shall be deemed guilty of murder in the first degree, and upon conviction thereof shall suffer death."  2 R. S. 1876, p. 423.

The common-law definition of murder is this:  "When a person of sound memory and discretion unlawfully killeth any reasonable creature in being, and under the king's peace, with malice aforethought, either express or implied."  4 Blackstone Com. 195.

The first count in the indictment is as follows:

"The State of Indiana ⎱
        vs.          ⎰ Indictment for murder in the
"Daniel C. Snyder.        first degree

"The grand jurors of Tipton county, in the State of Indiana, good and lawful men, duly and legally empanelled, sworn and charged in the Tipton Circuit Court, of said State, at the November term for the year 1876, to enquire into felonies and certain misdemeanors in and for the body of said county of Tipton, in the name and by the authority of the State of Indiana, on their oaths, do present, that one Daniel C. Snyder, late of said county, on the 12th day of September, A. D. 1876, at said county and State, did then and there unlawfully, feloniously, purposely and with premeditated malice, kill and murder one Hannah E. Snyder, by then and there feloniously, purposely and with premeditated malice, unlawfully administering to the said Hannah E. Snyder a certain deadly poison, commonly called strychnine, which the said Hannah E. Snyder then and there received at the hands of the

said Daniel C. Snyder, and which she, the said Hannah
E. Snyder, then and there swallowed, and by reason of
which she then and there died; he, the said Daniel C.
Snyder, then and there well knowing said strychnine to
be a deadly poison, and wickedly intending then and
there and thereby feloniously, purposely and with pre-
meditated malice to kill and murder the said Hannah E.
Snyder, contrary to the form of the statute in such cases
made and provided, and against the peace and dignity of
the State of Indiana."

The second count was similar to the first, but more full
and certain in its averments. It is conceded, that, if the
first count is good, no objection can be sustained to the
second.  A motion to quash was overruled, the court hold-
ing each count good.

The ground of the motion was, that neither count
averred, with sufficient directness, the intent to kill; and
*Fouts* v.  *The  State*, 8 Ohio State, 98, was cited.
That case decides, that "Intent or purpose to kill, al-
though not essential to constitute murder at common law,
is made one of the ingredients of the crime of murder by
the statute of Ohio;" and that "it is essential to the
sufficiency of an indictment for murder in the first de-
gree in this State, that it contain a direct and specific aver-
ment of the purpose or intention to kill, or intention to
inflict a mortal wound, in the description of the crime."

Our statute is similar to that of Ohio, and an indict-
ment must aver that the killing was purposely done.
Both counts in the indictment in this case make that
averment, and are sufficient.  *Dillon* v. *The State*, 9 Ind.
408; *Bechtelheimer* v. *The State*, 54 Ind. 128.

The next objection made is, that the court refused to
compel the prosecutor to elect on which count in the in-
dictment he would put the defendant on trial.  This was
a matter in the discretion of the court.  *Mershon* v. *The
State*, 51 Ind. 14.

The remaining error assigned is, that the court erred in overruling the motion for a new trial.

The causes assigned in the motion were:

1.    The verdict was contrary to law, and not sustained by the evidence.

2.    The court erred in permitting the State to introduce and read to the jury as evidence, over the defendant's objection, the writing or statement signed by the defendant and purporting to be his statement or evidence given by him as a witness before the coroner's inquest, held over the body of the deceased, Hannah E. Snyder.

3.    The court erred in permitting the State to introduce and read as evidence to the jury, over the defendant's objection, the report of the commissioners entered in Order Book 8 of the Tipton Common Pleas Court, in the case of Hannah E. King, John S. Mount, Guardian of Cassius M., Marshall W., Ulissus S. G., and Mary W. King v. John King.

4.    The court erred in permitting the State to propound to Dr. M. V. B. Vickrey, a witness for the State, over the defendant's objection, the following question: "State what Lee Mote said, when he came after you to go down to Snyder's, as to how Mrs. Snyder was?"    And in permitting the witness to answer the same, over defendant's objection, as follows: "That Mote told me that Snyder's wife was dying."

5.    The court erred in not allowing and permitting the defendant, over the State's objection, to prove by William B. Young, a witness for the defendant, "that Hannah E. Snyder, the deceased, told him, William B. Young, on the day her daughter Mollie died, that she wanted her buried the same day she died."

6.    The court erred in not allowing and permitting the defendant to propound to the witness, William B. Young, the following question: "You may now state what reasons Mrs. Snyder assigned, if any, in her own language, why she did not want her relations present at the burial."

And in not allowing the witness to answer the same, over the defendant's objection.

7. The court erred in not allowing and permitting the defendant to prove by Mrs. George Bowlin, a witness introduced and sworn on behalf of the defendant, that Dr. Newcomer inquired of Hannah E Snyder, the wife of the defendant, in her presence and hearing, whether the little girl had taken her medicine, and how many of the powders he had left had been given her?—he being the attending physician; and that she made no answer or reply whatever to the inquiry or question of Dr. Newcomer, but stood "mute."

8. The court erred in permitting the State, over the objections of the defendant, to introduce as evidence in support of her case the circumstances surrounding the sickness and death, and cause of death, of Mollie King.

9. The court erred in giving instructions numbered 1, 2, 3, 4, 5, 6, 7, 8 and 10, and in refusing to give special instructions asked to be given by the defendant, numbered 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, to the giving of each of which instructions, and the refusal to give each of which instructions, the defendant at the time excepted.

10. That the court erred in not giving instructions covering the whole case.

We will notice such as may be necessary of these causes assigned in the motion for a new trial, commencing with the second.

Admissions made by the defendant were admissible in evidence against him, if they were not made "under the influence of fear produced by threats." Sec. 93, 2 R. S. 1876, p. 396, and notes. There was no pretence that the written statement of admissions in this case was thus made.

It is said that the coroner's inquest was not legally organized; but we do not see how that fact, if it existed, would render admissions freely made, as those in question

appear to have been, if, indeed, what was contained in the written statement amounted to any admission, inadmissible in evidence. The court did not err in permitting the statement to be read in evidence. Bicknell Crim. Pr. 162.

Touching the eighth cause assigned for a new trial, we shall here express no opinion as to the correctness of the admission of the evidence therein mentioned on the trial had, since the cause must be reversed and go back for another trial. Such circumstances, or some of them, may be admissible for certain purposes in certain stages and aspects of the cause that may appear during the future trial.

The following authorities will give all needed information on the points: *Shaffner* v. *The Commonwealth*, 72 Pa. State, 60; *The People* v. *Doyle*, 21 Mich. 221; *Farrer* v. *The State*, 2 Ohio State, 54; *Regina* v. *Garner*, 4 Fost. & F. 346; *Regina* v. *Bailey*, 2 Cox C. C. 311; *Regina* v. *Dossett*, 2 Car. & K. 306; *Regina* v. *Geering*, 18 L. J. N. s M. C. 215; 1 Whart. Crim. Law, sec. 635 c.

In *Farrer* v. *The State, supra,* it was decided, that, " on an indictment charging the prisoner with poisoning A., in December, 1851, it is error to permit evidence in chief, to show that she poisoned B., in the month of August previous."

The third cause for a new trial was not a valid one. For the better understanding of the decision in this cause, we state the following facts: King, the former husband of Hannah E. Snyder, at his death, left real estate. He left surviving him a wife, the deceased, Hannah E. Snyder, then a widow, and four children, to whom his real estate descended, one-third to the widow and two-thirds to the said four children. Three of the children died after the death of their father and before the death of their mother. Said Hannah E. Snyder inherited one-half of the shares they had inherited from their father. This portion of her

property, viz., that inherited from her children, did not come to her by virtue of her marriage with King. Said Hannah also owned real estate by purchase. She owned real estate acquired in three modes, viz., by purchase, by inheritance from her children, and by virtue of her marriage with King. After King's death partition was made between her and her surviving children. The proceedings in partition were given in evidence, to show the quantity of the respective shares; but the court fully and correctly instructed the jury as to the extent of the rights of the wife, and the law of descent of such property, so that the jury labored under no false impression as to the strength of the motive furnished by the property of the wife to Snyder to commit the murder.

The ninth cause assigned for a new trial was error of the court in giving and refusing certain specified instructions.

Before noticing these instructions it may be observed, that it was essential to the conviction of the defendant that four facts should be proved beyond a reasonable doubt, and that the court should have so instructed the jury:

1.   The death of Mrs. Snyder.

2.   That she came to her death by poison.

3.   That that poison was feloniously administered by the defendant, or that he participated in such administration.

4.   That the offence was committed within the jurisdiction of the court.

In the second instruction the court says: "The defendant, having denied the charge made in the indictment, is by the law presumed innocent until proved guilty beyond a reasonable doubt."

The court was asked to instruct the jury, that they should carefully weigh all the material evidence on each and every material fact necessary to convict the defendant, and that, if there was a reasonable doubt in their

minds as to the establishment by the evidence of any one of' these material facts, they should acquit the defendant.

Waiving the general character of the second instruction, above copied, this more particular instruction ought to have been given. *Howard* v. *The State*, 50 Ind. 190.

In the fifth instruction, the court states to the jury: " We will call your attention to the material facts in the indictment which must be proven. First, the body of the offence, that is, that the death of Hannah E. Snyder was caused by poison." The court fails in this instruction, or any other, to continue the enumeration of the material facts necessary to be proved.

The court commences the sixth instruction thus: " We will now direct your attention to the question whether the defendant gave Hannah E. Snyder strychnine with a criminal intent." The jury might well have understood this instruction to assume that he gave her strychnine—a disputed point upon the trial—and left to them the question of intent alone, and is erroneous for that reason.

The eighth instruction given is this: " In connection with the evidence offered by the State to prove the guilt of the defendant, you should consider the evidence offered by the defendant to overcome the evidence of the State; not that he must prove innocence, but that you may have the whole case before you by the evidence. And, if by his evidence, or evidence produced by him, a reasonable doubt is raised, you should acquit. You should give it such weight and importance as you think it entitled to, for of these questions you are the exclusive judges." This instruction was calculated to leave the impression upon the minds of the jury, that the State had made out her case, and that, unless the evidence of the defendant raised in their minds a reasonable doubt, they should convict. Other instructions are open to criticism. But it is unnecessary that we should extend this opinion.

We may add a brief remark upon the first ground

alleged in the motion for a new trial, which was, that the verdict was not sustained by sufficient evidence.

The evidence showed that Hannah E. Snyder was dead; that she died in Tipton county, Indiana; that a few weeks afterward an analysis of her stomach disclosed the presence in it of forty-seven hundredths ($\frac{47}{100}$) of a grain of strychnine, and that an analysis of the stomach of her daughter, a child of eleven years of age, who died five days before the death of Hannah, exhibiting like symptoms to those attending the sickness and death of her mother, showed the presence in her stomach of nineteen hundredths ($\frac{19}{100}$) of a grain of strychnine; but through whose agency the poison found its way into those stomachs, and whether death resulted therefrom, are questions for the jury to solve, if the evidence will enable them to do it, on a future trial of this cause.

The judgment is reversed, cause remanded, and prisoner remanded to county, etc.