CUNNINGHAM v. THE STATE, EX REL. ZARTMAN.

BASTARDY.—*Instruction as to Time Child was Begotten.*—Where, in a prosecution for bastardy, it is a question, from the evidence, as to whether or not another than the defendant was the father of the child, which was a "full grown, nine months child," and as to whether, from the testimony of the relatrix, the defendant had had access to her within the period during which it must have been begotten, it was erroneous to instruct the jury trying the cause, that the day and month on which it was begotten were unimportant, if they found that he was its father.

SAME.—*Access Does Not Import Intercourse.*—It was also improper to instruct the jury, in relation to testimony by the relatrix that the defendant had been in her company at certain times, that such testimony tended to prove, that, at those times, he was having sexual intercourse with her.

SAME.—*Defendant's Knowledge of Relatrix's Pregnancy.*—An instruction, that the fact that the defendant was aware, and communicated to others his knowledge, of the pregnancy of the relatrix soon after the child was begotten, should be considered, was erroneous.

SAME.—*Occupation.— Credibility of Witness.*—An instruction, that, if the defendant was a teacher, that fact added nothing to his credibility, but in fact detracted therefrom, if he had in fact had sexual intercourse with the relatrix, was erroneous.

SAME.—*Pauper.—Instruction Prejudicing Jury.*—A statement, in an instruction, that the child was a bastard, and would become a charge upon the county if no father should be found for it, was improper.

SAME.—*Standing and Character of Defendant and Relatrix.*—It was improper for the court to instruct the jury, that they may consider whether the defendant, as a man of character, was likely to influence the relatrix, as a woman of a confiding nature, to consent to the sexual act.

SAME.—*Impeachment of Witness.—Character.*—The general moral character, but not specific acts, of a witness may be given in evidence to impeach him.

SAME.—*Instruction Reciting Evidence.*—An instruction professing to recite the testimony of a witness as it was given is erroneous.

SAME.—*Weight of Evidence.*—An instruction charging the jury as to the weight they should give to certain testimony is erroneous.

From the Miami Circuit Court.

*J. L. Farrar, J. Farrar* and *L. Walker*, for appellant.

*J. S. Slick*, for appellee.

BIDDLE, J.—Prosecution for bastardy, against the appellant, by the State, on the relation of Lucinda Zartman.

Conviction, followed by the usual order of payments for the support of the child. Appeal.

The only assignment of error in this court is, overruling the motion for a new trial, under which various questions are reserved, among which are exceptions to certain instructions given to the jury by the court, which were as follows :

" 1.    The statement of the prosecuting witness is, that Thomas Cunningham is the father of the child. If it is so, the verdict should be for the plaintiff; if not, for the defendant. The simple inquiry is, Is Thomas Cunningham the father of the child ? It does not make any difference whether it was begotten on Sunday, or any other day, if you find it proven at any time; nor does it make any difference if it was in April, May or June, if he was the father. The names of months and days are unimportant. The only question is, Was he the father of the child ?

" 2.    In answer to the statement of the girl, it is claimed that there was no opportunity of access. This I understand to be his ground of defence. If, when this commerce was claimed, he was absent, he could not be the father; and I understand that the defence, as to that extent, is on the ground of impossibility of access. ˙ Upon the one side is proof by the girl, and supported in some measure by the father, that Cunningham was at her house three several times, naming them.

" 3.    The testimony of the girl and her father, that he was present at the times, tends to show that Cunningham was at Zartman's house, having connection with her, on three several occasions. Several witnesses put that in question in this way : It seems Cunningham went to his father's house to remain over Sunday, and for other purposes. Now, if this girl and her father are to be believed, and you can put it together and make it consist

with the testimony of Cunningham and his sons, that he went home and remained over Sunday, you should do so.

" 4. For a person to say that an individual is in the neighborhood when he was with him is proper testimony, but for him to say he was in the neighborhood when he was not with him, or was with him only a part of the time, is saying something he don't know; it is not a statement of fact. If you can put these facts together, so that Cunningham could have gone and returned in these intervals, believing in the testimony of the plaintiff, so as to reconcile these statements, it is your duty so to find. If the testimony of Zartman and daughter, and of Cunningham and sons, can be reconciled, you, as a jury, should do it.

" 5. There has been information given as to early knowledge of Cunningham as to the pregnancy of the girl. The rule would be this, applied every day in different cases.

" 6. If a girl in the first two, three or four months of her pregnancy confides it, she is likely to tell it to a party who has a right to know it, and if he tells it you may enquire how Cunningham knew it. I don't mean to say he knew it, but, if he knew it, it is a question how he came to know it.

" 7. The fact that Thomas Cunningham was a teacher of the county does not add to his credit, if you find that he had carnal intercourse with the prosecuting witness, but is greatly to his discredit. Again, if you find a teacher in the public schools holding a certificate which recommends him as a teacher of good morals, and he likewise states, as does Frank Cunningham, that he has had carnal intercourse with a woman, it properly enters in the consideration of a jury upon his confession, as a fact going to his moral character.

" 8. We find here a mother without a husband, a child

without a father, which is or may be a public charge upon the county if no father is found. It is a case which goes to the good sense of everybody, by the jury to be judge see the proofs, by rules applied to ordinary experience. The condition of the girl, her mental force and her age may be considered; whether she is likely to be confiding and imposed upon, and what relations she bore the defendant, and whether from these to be more quickly overcome. If the person imposing is a man of character, the imposition is easier."

We may remark here, that the instructions are so irregularly numbered in the transcript, that we have renumbered them in the order in which they appear to have been given to the jury, and in the order in which they stand in the transcript.

Upon the trial the prosecuting witness, and the physician attending her delivery, testified that the child was born on the 23d day of December, 1875. The physician testified that he thought the child was a " full grown, nine months child," and gave the facts which induced his belief. This testimony was not contradicted.

There is testimony tending to prove that Samuel York had sexual connection with the prosecuting witness between the 17th and 20th of March, 1875, and testimony tending to prove that the appellant never saw the prosecuting witness until the 13th day of April, 1875, and that he never saw her again until the 6th of June, 1875. The prosecuting witness testified upon the trial, before the jury, that " the child was begotten about the 1st of April, about the middle of April, or about the 1st of May."

As applicable to the evidence before the jury, we do not think the instructions to the jury can be upheld. It was erroneous to instruct the jury what statements the prosecuting witness had made to them in her testimony, as was done in the first instruction; that was solely for the jury to

decide; and, in view of the testimony as to the time the child was born, it was improper to instruct the jury that it was immaterial whether it was begotten in April, May, or June; for, if it was born December 23d following, and was a " full grown, nine months child," it could not have been begotten in either of those months; besides, if it had been begotten on the last day of June, by the well known period of gestation, it could not have been born alive on the 23d day of the next December, and survived.

The sentence, " Upon the one side is proof by the girl, and supported in some measure by the father, that Cunningham was at her house three several times, naming them, " as stated in instruction number two, is erroneous. It directly tells the jury what proof was made by the girl, supported in some measure by her father. This was solely for the jury to decide, and not the court.

Instruction number 3 is wrong in telling the jury what the testimony of the girl and her father tended to prove; and the proposition, that, if the appellant was present at Zartman's house, that fact tended to prove that he was having connection with the girl " on three several occasions," can not be upheld as a rule of law.

The 4th instruction charges as to the weight and meaning of the testimony, and in this respect is erroneous.

We have not been able to understand the meaning of the 5th instruction, but it is clearly wrong in telling the jury that there had been information given as to early knowledge of Cunningham as to the pregnancy of the girl. If this question had any significance in the case, it was for the jury to decide, and not the court.

The 6th instruction contains merely an inference of fact uncoupled with any rule of law, and ought not to have been given.

The credibility of witnesses can not be impeached in the method pointed out in instruction number 7; their

general moral character may be given in evidence to the jury, but not specific acts, to impeach their credibility. This rule is well settled.

The first sentence of instruction number 8 amounts to assuming that the prosecutrix has been delivered of a child, and that the child is a bastard,—two important facts for the jury to find, and not for the court to assume; and the statement, that the child might become a public charge, if no father was found for it, was well calculated to prejudice the jury against appellant. We are unable to understand the second sentence of this instruction. The remaining part of it, as to the condition of the girl, her age, her being overcome, and the character of the person who imposed upon her, might have some significance in a trial for seduction; but in a trial for bastardy, wherein it is immaterial whether the girl was willing or unwilling, or consented or was overcome, it is wholly out of place, and would be very likely to influence the jury improperly.

Other questions are made upon the admission and rejection of evidence, and upon the insufficiency of the evidence to sustain the verdict, which we do not examine, as we think the appellant is entitled to a new trial on account of the erroneous instructions given to the jury.

The judgment is reversed, and the cause is remanded, with instructions to sustain the motion for a new trial, and for further proceedings.