## JACKMAN ET AL. *v.* THE STATE.

### No. 8259.

CRIMINAL LAW.—*Murder.*—*Admissions.*—*Instructions to Jury.*—Upon a trial on an indictment for murder, alleging the crime to have been committed by wilfully and maliciously changing a switch upon the track of a railroad, whereby a train of cars was wrecked, resulting in the death of a person thereon, it was admitted by counsel for the defence, among other things, that such death was the immediate result of such wreck, which was caused by some person or persons changing the switch along the track of such railroad at a certain place.

*Held,* that, upon such admission, it is erroneous for the court to instruct the jury that a crime had been committed.

*Held,* also, that the court should not, in its instructions to the jury, assume, much less state in emphatic language, that the crime charged had been committed, the determination of that fact being the exclusive province of the jury.

From the Vigo Circuit Court.

*N. G. Buff* and *C. F. McNutt,* for appellants.

*D. P. Baldwin,* Attorney General, *A. J. Kelly,* Prosecuting Attorney, *B. W. Hanna, E. Seldomridge* and *S. C. Davis,* for the State.

WORDEN, J.—The appellants, George Jackman and James Knight, were indicted in the court below for the murder of James Murry, by unlawfully, purposely, feloniously, wilfully and maliciously changing a switch and removing the fastenings thereof, upon the track of the Indianapolis and St. Louis Railroad, whereby a train of cars running upon the road was thrown from the track and Murry killed.

Trial, conviction, and sentence of imprisonment for life. New trial denied, and exception.

The indictment was based upon the following section of the statute:

" If any person shall wilfully and maliciously place any obstruction upon the track of any railroad, or change any switch, or remove the fastenings thereof, so as to en-

danger the passage of trains, or break, destroy, steal, take or carry away any lock or guard upon such switch, or wilfully commit any other act to throw the engine or cars running upon such railroad from such track, he shall be imprisoned in the state-prison not less than one, nor more than seven years; and if, from any accident on any such road, resulting from any such act, any person be so injured that death ensue as the immediate consequence thereof, the person so offending, shall be deemed guilty of murder in the second degree, and upon conviction shall be imprisoned in the state-prison during life." 2 R. S. 1876, p. 438, section 29.

A bill of exceptions shows that, during the progress of the evidence, certain facts were agreed upon, stated in the bill as follows:

" Here it was agreed and conceded that the railroad upon which the wreck occurred was the Indianapolis and St. Louis Railroad, owned and operated by the Indianapolis and St. Louis Railroad Company, a corporation existing under the laws of the State of Indiana; that James Murry, the deceased, was, before and at the time of said wreck and accident, a brakeman and riding upon the train, was killed, and that his said death was the immediate result of said accident and wreck; that the said accident and wreck was caused by some person or persons changing the switch on said railroad at St. Mary's, and that the death of said James Murry and the change and turning of said switch all occurred in Vigo county, State of Indiana."

The following is the first charge given by the court to the jury:

" Gentlemen of the Jury: For many days past you have been occupied in the trial of one of the most important criminal cases that ever engaged the attention of this, or perhaps any other court of criminal jurisdiction. A great

crime has been committed in this county, through an act which resulted in the death of a servant of a railroad corporation engaged in the arduous and dangerous duties of his position. Some time about midnight on the 8th of June last, or possibly some minutes later, which would bring it to the morning of the 9th, a west-bound freight train on the Indianapolis and St. Louis Railroad was wrecked at St. Mary's station, four miles west of this city; and James Murry, the forward brakeman, was crushed to death in an angle formed by the piling together of three of the cars that were thrown from the track.

"Evidence has been offered, tending to prove the manner of the death of James Murry; how his body was found; the difficulty of extricating it, by the long and laborious process of cutting away portions of the cars that confined it; and all the circumstances of the wreck, as claimed by the prosecution, have been fully detailed to you by the witnesses produced during the trial. The wreck was caused by some person or persons having, a little while before, turned the switch located at this place, to the side-track. This made the main track for the west-bound trains end at this point; and the freight train in question, as an absolute consequence, ran off the rails and upon the ties, and was wrecked in the manner described by the witnesses. Evidence has also been offered, tending to show that during the month of December last, the defendants in this case, James Knight and George Jackman, were taken before the grand jury of the county as witnesses, and that upon their testimony Oliver Wilson, James Kehoe and William Chrisman were indicted for the murder of James Murry, and that Oliver Wilson was tried in this court during the month of December, and was acquitted, and the indictment as against Kehoe and Chrisman was afterward nollied; and that the defendants in this case were witnesses for the State in the trial of Oliver Wilson. On the 15th

day of January, 1879, the grand jury of this court returned
an indictment charging the defendants now on trial before
you with the crime in question, and this is the case you
have been so carefully and patiently investigating. With
these preliminary statements, which contain only such
facts as have been generally admitted to be true by the
counsel for the defence, I shall now proceed to define the
law governing a prosecution of this character; after which
it will be your duty to determine, under the law and the
evidence, whether or not the defendants are guilty of the
crime."

It is claimed by the appellants that the charge was
erroneous, and especially the following clause:

" A great crime has been committed in this county,
through an act which resulted in the death of a servant of
a railroad corporation, engaged in the arduous and danger-
ous duties of his position."

The crime thus alluded to could, of course, have been
none other than that for which the appellants were on
trial. The charge in this particular was clearly and palpably
erroneous.    The court should not, in the charge, have
assumed that the crime charged had been committed;
much less should it have been stated in emphatic language
that it had been committed.    It was the exclusive province
of the jury to determine whether such was the case.

In the latter part of the charge the court said:

" With these preliminary statements, which contain only
such facts as have been generally admitted to be true by
the counsel for the defence, I shall now proceed," etc.

We suppose allusion was thus made to the agreement
and concession as to some facts hereinbefore set out.
There is nothing in the agreement or concession that
admits the commission of the crime by any one.    All that
is conceded may be true, and yet the crime charged may
not have been committed at all.

Jackman *et al.* *v.* The State.

It was conceded that James Murry was killed, and that " his death was the immediate result of said accident and wreck; that the said accident and wreck was caused by some person changing the switch on said railroad," etc.

It will be seen from the statute on which the indictment was based, that the switch must have been wilfully and maliciously changed, from which the accident causing the death resulted, in order to constitute the crime.

For aught that appears in the agreement or concession, the switch may have been changed by some of the railroad employees, innocent of any malice or wrong intent, under some misapprehension as to approaching trains.

Upon the point that the court had no right to assume the existence of a fact which the jury were required to find from the evidence, the following authorities may be consulted : *Smathers* v. *The State*, 46 Ind. 447; *Barker* v. *The State*, 48 Ind. 163; *Killian* v. *Eigenmann*, 57 Ind. 480. There are many other cases upon the point, but we deem it unnecessary to collect them here.

The charge in question may contain other unwarranted assumptions or statements, but we need not consider it further, as the objection already considered is fatal.

The appellants raise some other questions, but, as we think they will not be likely to arise upon another trial, we do not consider them. For the error above noticed, the judgment below will have to be reversed.

The judgment below is reversed, and the cause remanded for a new trial.

The clerk will give the proper notice for the return of the prisoners.