No. 10,715.

## BROOKS v. THE STATE.

CRIMINAL LAW.—*Murder in Second Degree.*—*Instructions.*—A homicide, to constitute murder in the second degree, must be perpetrated purposely and maliciously; and an instruction to the jury to the effect that certain facts enumerated therein, if found, would be murder in that degree, *purpose* and *malice* not being included in the enumeration, is a fatal error.

From the Wayne Circuit Court.

*T. J. Study* and *H. C. Fox*, for appellant.

*F. T. Hord*, Attorney General, and *C. E. Shiveley*, Prosecuting Attorney, for the State.

NIBLACK, C. J.—This was a prosecution for murder in the first degree. The indictment charged the appellant, Arthur Brooks, with having, feloniously and with premeditated malice, killed one Thomas Gause, in Wayne county.

There was a change from the regular judge, and the cause was tried by a judge called from another circuit. There was a

verdict finding the appellant guilty of murder in the second degree, and fixing his punishment at imprisonment for life. A refusal to grant a new trial, and judgment on the verdict followed.    There was no controversy as to the fact that the appellant had violently assaulted and unlawfully killed Gause at the time and place charged.    The only controversy was as to the effect, if any, which certain alleged circumstances ought to have had in mitigating the character of the homicide.

The nature of the circumstances relied upon in mitigation are sufficiently shown, for the purposes of this appeal, by the instructions given to the jury.

The thirteenth instruction given was as follows:

"If the deceased, Thomas Gause, seduced and committed adultery with the wife of defendant upon an occasion when the defendant was absent from home in Minnesota, and afterward the defendant, while at his residence, about dusk of the evening upon which the alleged homicide occurred, detected her with the letter given in evidence to you upon her person, and thereupon by force and persuasion, or either, or any other means, procured the possession of said letter from her, and thereupon attempted to read it, but could not, by reason of the darkness, and they thereupon went to a room upstairs in his said residence, and a lamp was then lit, and he got his revolver from his bed and sat down upon the floor, with his revolver upon his right side, and his wife upon his left, and he read the letter, part at a time, and demanded of her an explanation of what it meant, and she failed to give any, or told him she could not, and he placed his pistol in his pocket, and they thereupon went down stairs, and he started to get his coat out of the wardrobe, and asked her where his coat was, and she told him he had worn it away during the day and not returned it, and thereupon took hold of him, and told him if he would say nothing about it, and promise to live with her, she would tell him all about it, and he asked her how long this thing had been going on, and she then told him that when he was away from home, in Minnesota, Thomas Gause, the

deceased, had come and stayed with her and ruined her, and. thereupon, and by reason of said facts and said confession of his wife, he became convinced and honestly believed that said Thomas Gause had seduced and committed adultery with his. wife, and thereby, and by reason thereof, became frenzied and excited with a heat of passion, and impelled thereby, he formed the intention to slay the deceased, declared his intention to do so, and broke from her grasp, and immediately went to the office of said Gause, and acting in the heat of passion so engendered by said facts, killed him, such killing would be murder in the second degree, and if you have any reasonable doubt of the falsity of these facts, you could not convict him of murder in the first degree.    If after he conceived such intention, if such is the fact, he deliberated and with meditation thought and deliberated upon such intention before he put it, into execution, by killing said Thomas Gause, such killing would be murder in the first degree.    Likewise, if the defendant had an antecedent grudge against the deceased, and actuated thereby, he conceived and executed such intention to kill, not provoked thereto by the facts above recited, the killing would be murder in the first degree.    Such state of facts, as above recited, can in no event constitute such provocation as would reduce the killing, if any, under such circumstances,. from murder to manslaughter.    They might, and should, in case you should find the requisite premeditation, and convict, the defendant of murder in the first degree, be considered by you in determining the penalty to be attached."

It is, amongst other things, objected to this instruction that: it invaded the province of the jury by telling them what inference as a fact they should draw from the establishment of certain particular facts, and by singling out particular facts. as decisive of the appellant's guilt, without reference to other facts necessary to make out a case of murder in the second degree, and to other facts which may have been established by the evidence.

We think the instruction was erroneously given, for the

reasons urged, if for no other. It ignored the ingredient of malice in making out a case of murder in the second degree. As will be observed, the instruction told the jury that if the appellant "went to the office of said Gause, and, acting in the heat of passion so engendered by said facts, killed him, such killing would be murder in the second degree." A homicide must be perpetrated *purposely* and *maliciously* to make it murder in the second degree. R. S. 1881, section 1907. The instruction before us does not so inform the jury either directly or inferentially. The inference would seem rather to have been, that if the appellant, acting in the heat of passion engendered by communications then just made to him, killed Gause, that was sufficient to constitute the killing murder in the second degree, thus leaving out of view both the question of intention, and the necessary malicious condition of appellant's mind. The appellant may have resolved to kill Gause before leaving his own house, and yet, for aught that appears in the hypothetical state of facts submitted to the jury, he may have changed his mind and been induced to inflict the fatal blow on account of something which occurred after reaching Gause's office. The hypothetical facts, therefore, fell short of making out a case of murder in the second degree.

Under our system of practice, the court may sum up the evidence and submit hypothetical cases to the jury, but to do either of those things thoroughly and well usually requires very great care. It is a hazardous proceeding for the court, either directly or through the medium of hypothetical cases, to attempt any comments upon the evidence, and particularly to express any opinion upon it beyond an intimation or statement as to what certain evidence may *tend* to prove. The safer way is for the court to announce general principles applicable to the salient points of the evidence, and leave all inferences from facts apparently proven, or which the evidence tended to establish, to the jury. *Longnecker* v. *State,* 22 Ind. 247; *Larue* v. *Russell,* 26 Ind. 386; *Barker* v. *State,* 48 Ind. 163; *Snyder* v. *State,* 59 Ind. 105; *Cunningham* v. *State,* 65

Ind. 377; *Jackman* v. *State,* 71 Ind. 149; *Wood* v. *Deutch-man,* 75 Ind. 148; Thompson Charging the Jury, 68, *et seq.*

The instruction, set out as above, was given, as counsel agree, upon the theory that nothing affecting the characcer or chastity of the appellant's wife short of his catching her in the act of adultery with the deceased could be accepted as sufficient to reduce the homicide to manslaughter, and the question of the proper applicability of that theory to the facts of this case has been elaborately argued on behalf of the appellant as well as the State.

We need only now say that we do not regard the theory in question as applicable to the criminal laws of this State to the extent to which some of the text-writers and some of the courts of other States have carried it, but a full discussion of that question will be more appropriate when it shall be directly presented to this court. *Sawyer* v. *State,* 35 Ind. 80; *Cheek* v. *State,* 35 Ind. 492; *Combs* v. *State,* 75 Ind. 215; *Batten* v. *State,* 80 Ind. 394; *Stout* v. *State, ante,* p. 1; *Maher* v. *People,* 10 Mich. 212.

The court gave a carefully prepared and, in most respects, unobjectionable series of instructions, but we find ourselves unable to sustain the particular instruction to which our attention has been directed as above. Considered with reference to the evidence, and to other instructions given and refused, as well as the result of the trial, it appears to have been a controlling instruction in the cause, and to have, consequently, constituted a material error in the proceedings below.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will give the requisite notice for a return of the prisoner.