SUTHERLIN *v.* THE STATE.

[No. 18,317. Filed November 17, 1897.]

CRIMINAL LAW.— *Indictment.— Repugnancy.— Murder.—* An indictment charging that defendant with a revolver and some other instrument, to the grand jurors unknown, both shot, cut, struck, and bruised deceased, thereby inflicting mortal wounds from which he instantly died, is not bad for repugnancy, and does not charge two offenses. *pp. 697, 698.*

Sutherlin *v.* The State.

INSTRUCTIONS. — *Criminal Law.*— *Reasonable Doubt.*— *Statute Construed.*—There is no distinction in the application of the rule of reasonable doubt, as provided in section 1893, Burns' R. S. 1894, as to cases of positive or circumstantial evidence. *pp. 698, 699.*

SAME.—*Must be Considered Together.*—All of the instructions given in a cause must be considered together, and incomplete instructions may be completed and omissions therein supplied by subsequent instructions given. *p. 699.*

SAME.—*Inaccuracy of Language.*—*Criminal Law.*—A cause will not be reversed on appeal on account of the use of the word "murder," in an instruction to the jury defining the degrees of homicide, instead of the word "homicide" where no injury is shown to have resulted therefrom. *pp. 699, 700.*

SAME.—*Criminal Law.*—*Must be as to Law and not as to Facts.*—*Constitution Construed.*—Under the provision of section 19, article 1, of the constitution that "In all criminal cases whatever, the jury shall have the right to determine the law and the facts," the province of the court in the trial of a criminal cause is to advise the jury in matters of law only, and it is error to instruct upon the weight of the evidence or the ultimate conclusions from primary facts, or the evidence of such facts. *pp. 700–704.*

SAME.—*Erroneous Instruction not Cured by Contradictory Instruction.*—Where the court in the trial of a criminal cause instructed the jury as to the weight of the evidence and conclusions to be drawn from primary evidence, such error is not cured by the giving of another instruction, informing them that they were the exclusive judges of the law and the facts in the case. *p. 704.*

SAME.—*Erroneous Instruction.*—*When not Cured by Verdict.*—Where the court in the trial of a criminal cause by an instruction invaded the right of the accused to have submitted to the jury disputed questions of fact involving essential elements of his case, such error will not be held harmless on the ground that the verdict was right upon the evidence. *p. 704.*

From the Marshall Circuit Court. *Reversed.*

*E. C. Martindale* and *S. N. Stevens,* for appellant.

*W. A. Ketcham,* Attorney-General, *H. A. Steis, M. M. Hathaway, Harry Bernetha* and *Lauer & Glazelmer,* for State.

HACKNEY, J.—The appellant was charged, in an indictment of three counts, with the offense of murder

in the first degree. He was convicted, upon the second count, of murder in the second degree, and his punishment adjudged at imprisonment for life.

The second is the only count in the indictment the sufficiency of which is raised by the record, and it charged that at the county of Starke, on the 16th day of November, 1896, the appellant "did then and there unlawfully, feloniously, purposely and with premeditated malice, kill and murder one William E. B. Fetters, * * * by then and there unlawfully, feloniously, purposely, and with premeditated malice, shooting at and against and thereby mortally wounding the said William E. B. Fetters * * * with a certain deadly weapon, called a revolver, then and there loaded with gunpowder and leaden ball, which said revolver he, the said William Sutherlin, then and there had and held in his hands, and by then and there feloniously, purposely and with premeditated malice, cutting, bruising, striking, and thereby mortally wounding the said William E. B. Fetters, * * * in some way and manner, and by some means, instruments, and weapons, to the grand jurors unknown, of which mortal wounds, inflicted in manner and form aforesaid, he, the said William E. B. Fetters," then and there instantly died.

It is earnestly contended that this count was bad for repugnancy in charging a killing by shooting, and also a killing by cutting, etc. With a fair comprehension of the scope of the charge it could not be objectionable for repugnancy, even if it were conceded that repugnancy is a ground for the quashing of an indictment. Stripped of its repetitions and merely descriptive elements, it charged that the appellant, with a revolver and some other instrument, both shot, cut, struck, and bruised Fetters, thereby inflicting mortal wounds from which he instantly died.

It cannot be, with reason, and is not insisted, that a death from violence in both shooting and cutting involves two offenses. The position of counsel for appellant is that the charge is of two offenses, one in killing by shooting, and the other in killing by cutting and other means. When we have held, as we do, that the charge was that appellant inflicted two mortal wounds, one by shooting and one by cutting, etc., from which wounds death ensued, no ground remains for the question of repugnance.

Objection is raised to the court's instructions numbered ten, eleven, twelve, thirteen, fourteen, and eighteen, on the ground that they define "reasonable doubt" as applicable to cases of positive evidence rather than to one depending, as this does, upon circumstantial evidence. The argument in support of this objection is that by positive evidence all reasonable doubts of innocence must be removed, while with circumstantial evidence every reasonable hypothesis of innocence must be removed beyond a reasonable doubt.

Without stopping to inquire as to the possible existence of a distinction in the degrees of proof required in the two cases, it is necessary, in justice to the trial court, to say that the instructions mentioned are not criticised as proper definitions of the term "reasonable doubt" and of the requirement that, before a conviction may be had, the mind of each juror must be satisfied by such a degree of certainty that no reasonable doubt of guilt remains. Such instructions could only be beneficial to the defendant in a criminal cause, and they but state the rule of an express statute having no distinction as to cases of positive or circumstantial evidence. Section 1893, Burns' R. S. 1894 (1824, R. S. 1881).

That the instructions pointed out did not go so far

as to include a statement of the rule that in circumstantial evidence it must, before conviction, exclude every reasonable hypothesis of innocence, and that merely to coincide with guilt is not the degree of proof required, is fully answered by the rule that all instructions must be considered together, and that the court in its twentieth and twenty-first charges instructed fully and clearly upon the very elements claimed to have been omitted from those first named.

The court's twenty-second charge is complained of as instructing that any unlawful killing of a human being was murder, and, therefore, did not include manslaughter. The charge directed the jury, that, if they found that Sutherlin had unlawfully killed Fetters, "it then becomes your duty to determine from the evidence whether the defendant is guilty of murder in the first or in the second degree or of manslaughter, and, in this connection, I instruct you that under an indictment for murder in the first degree, a person guilty of some grade of killing a human being may be convicted of murder in the second degree and also of manslaughter, according to the grade of offense shown by the evidence, and it is important in this connection that you should clearly understand what it is that constitutes these three degrees of crime which may be included in the offense called murder. Any unlawful killing of one human being by another is a murder of some kind, and different degrees of punishment are imposed upon conviction of the offender according to the degree and enormity of the offense." We think it manifest, not only from the language of the charge itself, but from others, in which the various grades of criminal homicide were defined and said to be included within the charge of murder in the first degree, that the word "murder" as employed in the last paragraph of the charge was intended, and could not have

been understood otherwise than, as in its common and ordinary meaning, as implying an unlawful killing without regard to the technically defined grades of criminal offenses. In the paragraph preceding that in question, the statement of the court most clearly implies the use of the word in its common and broadest sense, for it is there said that the jury must understand what constitutes the three degrees of crime included in that called murder. At most, the word "murder," employed as it was, could have been but a slight verbal inaccuracy and not injurious. *Brown* v. *State*, 105 Ind. 385; *Stout* v. *State*, 90 Ind. 1.

The court's thirty-third instruction related to the contents of affidavits taken by the coroner, upon his inquest, and introduced in evidence in this case. The jury were told that they need not, and should not consider, as evidence, the parts of such affidavits made upon hearsay, rumor, or supposition, if there were such, but that they should consider only such statements as were within the actual knowledge of the deponents. Complaint is made that this charge is too general in not pointing out the evidence to be disregarded, and that it left the jury to perform that duty. It is not apparent that this charge was harmful to the appellant, nor does it occur to us to have violated any rule of law or practice. If the appellant had desired a more particular charge he should have asked it. If, instead of written evidence, it had been oral, we see no impropriety in directing the attention of the jury to the rule that evidence from knowledge, and not from rumor and the like, was alone to be accepted. We observe no plausible ground for complaint of this charge by the appellant, and his complaint is so meager as hardly to be classed as an argument.

The court's thirty-fourth charge was, in part, as follows : "*If, gentlemen, you find from the evidence that*

*the human body found in the grave beneath the buried*
*body of a mule was in fact the dead body of William*
*E. B. Fetters, then you are justified in finding that*
*a murder had been intentionally committed, and that*
*the person or persons who undertook to conceal the*
*body of Fetters, by burying it in this manner, were*
*connected criminally in some manner with the murder.*
It follows that if you can determine from the facts and
circumstances before you, as shown by the evidence,
who were the persons, or who was the party that so
buried the body of Fetters, you will be able to deter-
mine who the person or persons are who had taken
part in the murder.   William Sutherlin is charged
in this case with being the man, or one of the men,
who committed the murder, and this trial is for no
other purpose than that of deciding whether this
charge is true.   It does not follow in the least that,
because he is so charged, he is possibly, probably, or
presumptively guilty." It then continues with gen-
eral observations as to the purpose of the State to try
only upon the evidence; of the duties of jurors to give
their best thought to a consideration of the whole evi-
dence, and to indulge in no mere guessing, the cer-
tainty required for conviction, and the duty to acquit
where that certainty is not attained.

The parts of the charge objected to are those which
are italicized, within the above quotation, and the ob-
jection urged is that they invaded the province of the
jury in assuming and declaring the weight and pro-
bative force of, or inference deducible from certain
circumstances proven.

The jury were plainly told that if the evidence
proved that Fetters' body had been found buried be-
neath the body of a mule, then they were justified in
finding that a murder had been intentionally com-
mitted.   Not only this, but that the person who under-

took to conceal Fetters' body, by so burying it, was connected criminally in some manner with the murder. The latter proposition is followed by a statement making it clear that the court intended to declare what inference might be drawn from the evidence. It was there said, that if the jury could determine who so buried Fetter's body, they would be able to determine also that such person took part in the murder.

The able counsel representing the appellee do not claim that the several inferences declared by the court were not inferences of fact, or that they were inferences of law, or law and fact. They were very clearly inferences of fact, and it is only necessary to inquire if, under the law, the court was authorized to draw them.

The constitution provides that "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." Const. Art. 1, section 19. It has been frequently held that where there is testimony which has any legal effect in a cause, it would be error in the court to determine the weight of it, or the fact which it does or does not prove. *Myers* v. *State*, 121 Ind. 15; *Brooks* v. *State*, 90 Ind. 428; *Jackman* v. *State*, 71 Ind. 149; *Cunningham* v. *State*, 65 Ind. 377; *Snyder* v. *State*, 59 Ind. 105; *Field* v. *State*, 50 Ind. 15; *Barker* v. *State*, 48 Ind. 163; *Smathers* v. *State*, 46 Ind. 447.

In the recent case of *Newport* v. *State*, 140 Ind. 299, the rule is stated that "What evidence proves or tends to prove, after it has gone to the jury, is a question solely for the jury to decide, and it is error for the court to interfere with their decision upon the weight of the evidence, by instruction," citing a number of cases not cited above.

It is true, as counsel for the appellee contend, that the court had in other instructions charged the jury

that they were the exclusive judges of the law and the facts in the case. Accepting the rule that all instructions must be considered together, it is further contended that no error existed in the thirty-fourth charge. In the case of *Newport* v. *State, supra,* it was said: "The objection urged against this instruction is that it invades the province of the jury and directs them as to what weight they shall give to certain evidence. They had already been instructed that they were the exclusive judges of the evidence, and its weight and force, and also of the law. But another instruction taking power away from them would not be cured by the former unless the latter was distinctively withdrawn. *Binns* v. *State,* 66 Ind. 428; *Kingen* v. *State,* 45 Ind. 518; *Bradley* v. *State,* 31 Ind. 492." See,. also, *Howard* v. *State,* 50 Ind. 190; *Guetig* v. *State,* 63 Ind. 278. There is no claim that any instruction withdrew that objected to.

Counsel correctly say that the Newport case; *supra,* decided that to instruct the jury that they would be "justified" in a given conclusion from stated premises is but to instruct that the jury may so conclude, and is not a command that they should so conclude if the premises are found as stated. We are not able to discover the relief to be gained for the instruction in review by the holding referred to. The province of the court was to advise in matters of law only, and it here advised, not as to a legal inference, but as to an inference of fact. Can it be said that the jury accepted the instruction as upon a question of fact, and, because it invaded their province, declined to be controlled by it, or can we say that it was not accepted as a conclusion of law? We think not. Not that the jury may not have been able to make the nice discrimination between those propositions in instructions which may be inferences of fact, and those which may

be conclusions of law, but the danger that they may not, illustrates the wisdom of denying to the court the privilege of instructing upon the weight of evidence or the ultimate conclusions from primary facts or the evidence of such facts.

But it is said that, although erroneous, it was harmless, because the verdict was right upon the evidence. Many decisions hold that an erroneous instruction will not require a reversal, unless, as some of the cases put it, it shall appear to have been prejudicial to the substantial rights of the complaining party; while other cases say it will be regarded as harmless if the record clearly discloses that the final result was right. The difference in the expressions of the rule may affect the burden of the issue, but with that we are not now concerned. The rule has its foundation upon the statute which provides that, "In the consideration of the questions which are presented upon an appeal, the supreme court shall not regard technical errors or defects or exceptions to any decision or action in the court below, which did not, in the opinion of the supreme court, prejudice the substantial rights of the defendant." Section 1964, Burns' R. S. 1894.

This statute has been invoked in many cases, some of which are: *Voght* v. *State*, 145 Ind. 12; *Reed* v. *State*, 141 Ind. 116; *Strong* v. *State*, 105 Ind. 1; *Brown* v. *State*, 105 Ind. 385; *Epps* v. *State*, 102 Ind. 539; *Stout* v. *State*, 96 Ind. 407; *Galvin* v. *State*, 93 Ind. 550. The cases do not establish a uniform rule from which to determine every case, and, it seems, that in any case the statute should be looked to for guidance.

In Elliott's App. Proced., section 631, it is declared that errors are not harmless where they relate to a primary or fundamental right, that affecting the cause of action rather than the mere procedure by which the cause is sought to be enforced. The statute in

Sutherlin v. The State.

question renders harmless those errors, defects and exceptions which do not "prejudice the substantial rights of the defendant."

Is it, therefore, a substantial, primary or fundamental right of an accused to submit conflicting evidence of questions of fact, of direct and vital importance, to the jury, without an assumption of their province in this regard by the court? We think this question must be answered in the affirmative. If such questions are in dispute upon the evidence the trial court, in passing upon them, would usurp an exclusive function of the jury; and if this court, to support the trial court, should assume to adjust the conflict in the evidence, it would violate its own rule that it possesses no power to weigh and determine conflicts in the evidence, and would thereby repeat the error of the trial court.

If there were no conflict, or if the evidence related to some merely incidental or uninfluential or unimportant fact, another phase of the question would be presented.

In Elliott's App. Proced., *supra,* section 643, it is said: "Where the evidence is uncontradicted, or where the complaining party could not have prevailed, no matter what the instructions were given, the rule may be readily and easily applied, but where there is some, although apparently no very material conflict in the evidence, there is much difficulty in practically applying the general rule, inasmuch as in such cases there is danger of invading the province of the jury and usurping functions that do not belong to the court."

We conclude, therefore, that the constitutional right to submit disputed questions of fact, involving essential elements of the case, to the jury, is a sub-

stantial right, and that when it is invaded by the trial court this court is given no right, by the statute, to hold such invasion harmless.

For the error suggested, judgment is reversed, with instructions to grant appellant's motion for a new trial.