143 P.2d 585

**OLGUIN v. THYGESEN et al.**

No. 4749.

Supreme Court of New Mexico.

Sept. 23, 1943.

Rehearing Denied Dec. 6, 1943.

Simms, Modrall & Seymour, of Albuquerque, and Crampton & Robertson, of Raton, for appellants.

Wilson & Wright, of Raton, and Fletcher A. Catron, of Santa Fe, for appellee.

MABRY, Justice.

Plaintiff (appellee) brought this action to recover damages for personal injuries and for damages to his truck, alleged to have been caused by the negligence of defendants. (appellants). The case was tried to a jury, which resulted in a verdict of $6,309, together with costs, and defendants appeal, assigning errors which are argued under five points, namely:

(1) The trial court should have declared a mistrial and discharged the jury panel because of the improper question relating to indemnity insurance asked of the jurors on their voir dire examination;

(2) The injuries suffered by the plaintiff were compensable under the Workmen's Compensation Act, and hence plaintiff could not maintain a common law action for negligence;

(3) As a matter of law, the plaintiff was guilty of contributory negligence barring any recovery;

(4) The District Court erred in giving "Plaintiff's Requested Instruction No. 1."

(5) The verdict is erroneous on its face.

We examine first the question whether a mistrial should have been declared and the jury panel discharged because of the alleged improper question relating to indemnity insurance which was propounded to the jurors on their voir dire examination. In the course of examination of the jury panel one of the attorneys for plaintiff asked the question: "Gentlemen, I will ask all of you a general question: If it should develop that the real party in interest was an insurance company would that make any difference in your verdict?" This question was immediately objected to, and the court asked to declare a mistrial and dismiss the jury panel. Their motion was overruled and the court then and there instructed the jury: "Gentlemen of the Jury, you are instructed that on the last question that Mr. Wright has asked you Gentlemen of the Jury as a body, the objection was made to the question and the

court sustained the objection, and you are now instructed that insofar as that last question applies to the insurance company you may disregard that entirely as it is out of the record so far as this case is concerned." Defendants contend that not only was the question improper, but that assuming it to be improper, the court's instruction did not cure the error or the prejudice engendered thereby. Counsel for defendants concede that plaintiff, in this character of suit has the right to inquire of prospective jurors whether they are employed by an insurance company or whether they own stock in any such company, or even the inquiry may go so far as to ascertain whether members of the immediate family are employed by or own stock in such company, but urge that under no circumstances must the question be asked in such a way as to convey directly the idea that the party sued is indemnified, and never merely for the purpose of getting the fact before the jury. And, counsel for plaintiff seem to have no quarrel with this statement of the law.

We know that courts sustain questions propounded to juries upon their voir dire when they are asked directly whether they own stock, or are interested, in an insurance company; even when the insurance carrier is called by name, although this latter method is not recognized as the best way to secure the information. See Fielding v. Publix Cars, Inc., et al, 130 Neb. 576, 265 N.W. 726, 105 A.L.R. 1306; Levens v. Stocco, 5 Cal.App.2d 693, 43 P.2d 357; Green Construction Co. v. Lampe, 174 Okl. 351, 50 P.2d 286; Dowd-Feder v. Truesdell, 130 Ohio St. 530, 200 N.E. 762.

The question is not whether any rule of law can deny a litigant reasonable latitude in the examination of prospective jurors as to their qualification in this as in other respects. A rule which would deny him that right or deprive him of that privilege deprives him of a substantial right. Dowd-Feder v. Truesdell, supra. What is reasonable latitude, and what is a good faith effort as distinguished from a ruse, or trick, to get to the jury the knowledge that the defendant is insured, is the question.

It is neither wise nor desirable for a court to prescribe the specific form such interrogatories are to take or the manner of their presentation. This matter is one for the trial court to determine in the exercise of its sound discretion. The overwhelming weight of authority is that where parties act in good faith, considerable latitude should be allowed in the interrogation concerning the competency of prospective jurors to try the facts under investigation.

"The questions that may be propounded necessarily vary with the varying issues, circumstances, and parties as such issues, circumstances, and parties may operate to influence or bias particular jurors, as distinguished from jurors generally. Because of the great variety of such influences, the character and scope of the questions that may be propounded necessarily cannot become standard, but must be controlled by

the court in the exercise of a sound discretion, the court having for its purpose [the] securing to every litigant an unbiased jury." Pavilonis v. Valentine, 120 Ohio St. 154, 165 N.E. 730, 731.

"Much rests in the discretion of the courts as to what questions may or may not be answered, but, in practice, very great latitude is, and generally ought to be, indulged." Epps v. State, 102 Ind. 539, 549, 1 N.E. 491, 494.

In Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552, a proper means of ascertaining the qualification of jurors with respect to their insurance connections is proposed, but yet that court immediately adds that there could be cases wherein it would happen that there would be no reasonable method of getting at the question except by some form of direct interrogatory which would, of necessity, disclose that defendant in the particular case was probably insured.

■ The great majority of the cases passing upon this question hold that the form of the question, the circumstances of its being asked, and the manner of its presentation is a matter resting largely in the trial court's discretion, which is not to be disturbed in the absence of a clear showing of abuse. For cases resting the holdings upon it being a matter within the trial court's reasonable discretion, see Beasley v. Bond, 173 Okl. 355, 48 P.2d 299; Fielding v. Publix Cars, Inc., supra; 105 A.L.R. 1326. In Sparks v. Holland, 209 N.C. 705, 184 S.E. 552, it was held that

when the trial court found good faith back of the questioned query it was justified in saying there was no error in propounding it. This is in line with the holding in a large number of the cases which have been called to our attention.

■ Questions directed to jurors on voir dire examination in regard to their interest in insurance companies are not prejudicial per se. Even assuming that such questions apprise the jurors that an insurance company is interested in the final outcome of the case, it does not necessarily constitute reversible error. If the amount of damages assessed by the jury is not disproportionate to that which the evidence reasonably justifies, or defendant's liability under the evidence is not a close question, it has frequently been held that there has not been a miscarriage of justice. Williams v. Layne et al., 53 Cal.App. 2d 81, 127 P.2d 582, 584; Arnold v. California Portland Cement Co., 41 Cal.App. 420, 183 P. 171; Eldridge v. Clark & Henery Const. Co., 75 Cal.App. 516, 243 P. 43. It is said in Faber v. C. Reiss Coal Co., 124 Wis. 554, 102 N.W. 1049, that such examination of jurors is proper so long as it is conducted in an honest effort to discover the status and state of mind of jurors regarding the matter in hand, or any matter reasonably likely to unduly influence them.

Judging from the more recent and better reasoned cases, it may be said that appellate courts more and more are inclined to leave with the trial court's discretion

the determination of this question. Whether there has been an abuse of this privilege which litigants possess of ascertaining whether jurors would be unfairly influenced if liability insurance were involved in the case, is left largely to such discretion, and when reasonably exercised, to remain undisturbed in these, as in other cases.

We are directed to innumerable cases where the question has arisen; and these are not all cases where we have an implication merely, but many arose under circumstances of a clear showing, that the defendant was so insured. As is pointed out by the note writer in 105 A.L.R. 1320, it is not the proper inquiry which of necessity divulges the information that is sought to be restricted, but rather the abuse which has arisen through bad faith injection of the question, through one method or another, where no useful purpose can be served. In this connection, see annotations in 44 A.L.R. 1403; 56 A.L.R. 1418-1515; 74 A.L.R. 849 et seq.; 87 A.L.R. 250, 900; 95 A.L.R. 388 et seq.; 97 A.L.R. 546; 105 A.L.R. 1319 et seq. In the case at bar the trial court obviously found good faith; otherwise the motion interposed for the discharge of the jury would have been sustained.

A reading of the numerous cases upon the question of how far counsel may go in questioning witnesses or jurors, and in statements and comments to or in the presence of jurors regarding whether the defendant in personal injury or death cases carries liability insurance, cannot but impress all of us with the thought that the time may come when more frankness and less unsupportable fiction will call for permitting the jury to know when there is such insurance. Language found in the case of Fortner v. Kelly, 1933, 227 Mo.App. 933, 60 S.W.2d 642, 644, affords an example of how courts might soon be viewing the question. Language there employed expresses the thought that must occur to most of us when there is suggested the fiction that jurors, unless told, will not suspect that large employers of labor, for example, and others likely to be subjected to actions for negligent conduct are now usually indemnified against liability therefor. We quote from Mr. Justice Shain, the author of that opinion: " * * * The thought presents itself that there would be less prejudicial results if a frank and open statement were made by the court that insurance was involved and an examination of the panel under oath as to whether or not the fact of insurance would in any wise influence them in the consideration of the case. It may be that a jury, with a full knowledge of the fact being thus placed upon honor, would be less prejudicially influenced than when brought into the case under conditions where it is made manifest that the defendant is trying to keep it out. A reading of the cases justifies the assertion that, when the fact of insurance is properly admitted over the objections of counsel, the psychological prejudicial effect is greater than if admitted under a rule such as is above presented. * * * "

It must now be rather generally recognized that in suits of this character at least the large employer of labor usually carries liability insurance, and that the insurance carrier in such cases is in fact, if not strictly as a matter of law, the real party in interest since it must pay any judgment recovered. To say that jurors do not understand this to be the case is to credit them with less understanding of everyday life and business economies than the average man. We are not prepared to accept the invitation to carry the fiction further than it has been carried up to this time. The question, although it could, and should, have been more artfully put, cannot, under the circumstances of a verdict not excessive, and in view of the cautionary instruction given by the court (although not too skilfully phrased itself), be said to have been so prejudicial as to have required the discharge of the jury. The assignment is without merit.

Was the injury suffered by plaintiff compensable under the Workmen's Compensation Act so that plaintiff could not maintain a common law action for negligence as was done in this case? A statement of the facts becomes necessary in order to resolve the proper answer to this question. The defendant, Henry Thygesen & Company, was engaged in the business of road contracting in the construction and repair of a state highway under contract with the New Mexico State Highway Department, where at the time of the accident, August 16, 1941, some 50 to 75 men were employed. The plaintiff himself was employed on the work as a "flare man", whose duty it was to put out flares to protect traffic moving upon the highway against collision with the men, equipment and material employed upon the road job. It was his duty to drive his truck out on the highway just before dark in order to put out flares and signs, driving the entire stretch of the road "where they were tearing the road up and doing patching", but not on other portions of the road where men were only putting down oil or doing other work.

After putting out flares, plaintiff, as such "safety" workman, would then return, driving over the same road checking the flares to see that they were in proper order and burning. As a usual thing he finished his work in some four hours and was back home, where he was permitted to take off from work and retire. His work of the day ordinarily was finished once he had set out the flares and signs, checked them to see that the signs were in place and the flares burning and returned from his task. The next morning he would drive out on the road again and pick up the flares and signs, usually starting this work at about five o'clock; there was no time set for him to begin or end his work and he did not have to report to anyone, as to time consumed. The plaintiff was under no obligation to go out upon the highway any other time in the evening after having set out the flares and flags and having checked them upon his return to nearby Cimarron, his headquarters.

The accident occurred while plaintiff was driving upon his own business and in no

way connected with the business of the company. He was taking a fellow workman to work at about 11:00 o'clock in the evening. He was driving over the highway covered by the contract, and, while the accident occurred on the site of the employer's operations, it was not at a place where the road was "torn up" or where "patching was being done"; in fact, the accident occurred some two or three miles from the end of the project where plaintiff was required at this particular time to place flares and signs, i.e., from the torn up part of the road where the patching work was in progress. Upon this drive on the night in question when plaintiff was taking his fellow workman to work, as an accommodation to him, he collided with a certain road roller vehicle operated by defendants upon the project, which vehicle had been stopped and parked on the oiled and main traveled portion of the highway; the roller was left unlighted and without flares or light devices of any sort on or either in front or to the rear of said parked vehicle. The night was dark, though clear.

Plaintiff suffered from this collision painful injuries to his face and body generally, and a permanent injury to one foot, where a cord, or ligament, was broken, and the nerve controlling movement of the member was severed, or injured, to such an extent that any voluntary movement of the injured member became impossible. It must be conceded that the injury to the foot was serious and is permanent. Plaintiff must have the aid of a mechanical device, or spring, attached jointly to his injured foot and to the leg, in order to keep the foot from "dropping down" in the process of walking.

We hold that the suit was properly brought as a common law action for damages for negligence. The Workmen's Compensation Act had no application since plaintiff was not at the time working "in or about the premises occupied, used or controlled by the employer", nor did the injury occur elsewhere while plaintiff was at work in any place where his employer's business required his presence. Par. (l), sec. 57-912, Comp.1941. And, plaintiff was not injured "while on his way to assume * * * or after leaving such duties" by any negligence of the employer. The rule we noticed in Cuellar v. American Employers' Ins. Co., 36 N.M. 141, 9 P.2d 685, would not be applicable. There is substantial evidence in the record to show that at the time of the accident plaintiff was not working; and, moreover, there is enough to show that by his contract of employment, he was not required to be at work or on that portion of the highway in question. The verdict and judgment, challenged upon the ground that there was not substantial evidence to support, will, on such issue, be sustained.

Was plaintiff, as a matter of law, guilty of contributory negligence? We think not. Defendants must rely upon the following circumstances to make plaintiff guilty of contributory negligence as a matter of law: That plaintiff knew fresh oil had been put down the very day of the

accident at the point where the collision occurred; he knew the road rollers were operating at night and had seen them that very day only a few miles away from the scene of the accident; that plaintiff was driving at a rate of some 35 miles per hour on a straight, level road, on a cloudless but quite dark night, with no other cars or vehicles near the scene, and with lights on the car driven by plaintiff that would provide vision for only some 75 feet, and with nothing to distract his attention from the road ahead of him. The roller was black, not substantially different from the color of the recently oiled road.

These circumstances, say defendants, and the fact that plaintiff, as he contends, drove his car into the road roller without seeing it, and did not, at the speed driven, have sufficient time after sensing the danger to apply his brakes or turn out to avoid the collision, make out a case of contributory negligence as a matter of law. We think not.

The question of contributory negligence, as a general rule, does not resolve itself into one of law, but must be submitted to the jury, as a question of fact. O'Brien v. McGlinchy, 68 Me. 552; Smith v. Rio Grande W. Ry. Co., 9 Utah 141, 33 P. 626.

The burden of showing contributory negligence is upon the defendant, and "when a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury" is the rule almost universally applied, and the one which we approved and applied in Padilla v. Atchison, T. & S. F. R. Co., 16 N.M. 576, 597, 120 P. 724, 729. See, also, Hogsett v. Hanna, 41 N.M. 22, 63 P.2d 540, and Russell v. Davis, 38 N.M. 533, 37 P.2d 536.

This rule applies whether the issue is one of defendant's negligence or that of contributory negligence on the part of plaintiff. Vol. I Shearman and Redfield on Negligence, 314, sec. 129. Under the facts here presented it was a jury question; and the jury had the right to determine from the evidence that there was no contributory negligence. We are not able to say that reasonable minds could not differ upon the question as to whether the plaintiff was contributorily negligent.

Further complaint is made of the giving by the court of plaintiff's requested instruction number 1, which undertakes to state how and under what circumstances road rollers upon public highways in the state shall be protected by signal lights in the night.

The defendants' objection goes to the fact that this instruction was read separate and apart from the other instructions embodied under one cover and read together, urging that such separation would place undue emphasis upon this particular instruction; and the further objection was urged that such instruction is not in compliance with the law for the reason that the exact language of the statute as to the location of, or the kind or

character of lights required, is not used. This, it is claimed, could have confused the jury to the prejudice of the defendants. We see no merit in either contention. There is no requirement that instructions shall be presented to the jury in any particular order. Instructions, it is assumed, will be considered by the jury as a whole. We have stated that to be the rule.

■ Incidental error will not afford cause for reversal where the instructions as a whole fairly submit the law and the facts. Pinkerton v. Ledoux, 3 N.M. (Gild.) 403, 5 P. 721.

The difference between the kind and character of lights and lamps mentioned in the questioned instruction and that found in the statute is not great enough, to our minds, to make any difference. The jury was entitled to believe the testimony to the effect that the roller with which plaintiff's car collided was, in fact, wholly without lights of any kind or character. Any error in describing the location and character of lights required for the vehicle was therefore harmless.

■ Under point 5 defendants contend that error was committed by the jury by the addition of certain language to the prepared form of verdict for its use. We do not sense sufficient uncertainty or indefiniteness in the verdict as rendered, or any other circumstances which would impeach it, although the form submitted by the court was somewhat amended. It is clear that the verdict was for a total of $6,309, and this included the value of the

truck fixed at $450, and in the other item which made up the balance of $5,859, was included $5,000 for disability, and the balance could appropriately have been for suffering, loss of time, hospital bills and other expenses. This point is likewise without merit.

Finding no error the judgment is affirmed, and

It is so ordered.

SADLER, C. J., and BICKLEY and BRICE, JJ., concur.

THREET, J., did not participate.

On Motion for Rehearing.

MABRY, Justice.

Defendants-appellants, in motion for rehearing, urge upon us a further consideration of the question whether contributory negligence should not be imputed to plaintiff as a matter of law. We gave full consideration to that question. Defendants cite and rely upon Pettes v. Jones, 41 N.M. 167, 66 P.2d 967, and Martin v. Herzog, 228 N.Y. 164, 126 N.E. 814, which was cited and relied upon in Pettes v. Jones, but they fail to notice our later decision in Crocker v. Johnston, 43 N.M. 469, 95 P.2d 214, wherein Pettes v. Jones, in respect to the holding upon contributory negligence which we assume defendants rely upon, was overruled.

■ Plaintiff, it is true, was violating a statutory rule of the road in driving

at the rate of 35 miles per hour with headlights which could afford vision for only some seventy-five feet ahead; but that fact alone does not establish such violation as a proximate cause of the injury. Negligence per se arising through the violation of a statute leaves unchanged the burden resting upon defendant to establish contributory negligence; and such negligence is not established until it is shown to be a proximately concurring cause of the injury. The question of contributory negligence, as it might or might not be sustained by the establishment of such proximate causation, was, under the facts of this case, one for the jury.

We accept defendants' claim that plaintiff was guilty of negligence per se, as affected by the question of light and speed; but we yet have the issuable question whether such negligence was a proximately concurring cause of the injury. This issue is to be resolved in the light of the facts, noticed in our original opinion, that the night was dark and there was a substantial likeness in color between the freshly oiled road and the dark, unlighted, road roller, thus rendering it less likely to focus quickly the attention of a driver.

The record is barren of any evidence on the distance within which a car travelling at a given rate of speed may be safely brought to a stop by a sudden application of brakes in good working order. We do not feel disposed to base a declaration of contributory negligence as a matter of law on mere speculation as to whether, if the plaintiff had had lights furnishing twenty-five feet additional range of vision, or, if he had been travelling at a speed fifteen miles per hour less than that admitted (either of which, under the facts here present, would have been within the law), he could or could not have brought his car to a stop within the distance he should have discovered the presence of the road roller, under the conditions shown to exist.

■■ Likewise, we cannot resolve as a matter of law in favor of defendants' ably and earnestly presented contention that for plaintiff not to have seen the unlighted machinery before hitting it, travelling at any authorized rate of speed, necessarily presupposes that no lookout whatsoever was maintained by him. It might be conceded that he was not exercising quite as vigilant a lookout for that which "is unusual or unlikely to happen" as he was for road hazards lawfully employing the use of the road and, therefore, to be expected. Jacobs v. Moniz, 288 Mass. 102, 192 N.E. 515, 517. And, the fact that his vision was not obstructed, since the road was straight and level and that no other vehicles were near the scene to confuse him, did not absolve plaintiff of the duty, nevertheless, of keeping a reasonable watch for traffic that might momentarily enter from either side of the road, as well as for hazards in the road straight ahead.

■ The circumstances of each case must determine the degree of alertness required of a driver in keeping a lookout for road hazards; and, usually, as here, it becomes a question for the jury.

Other questions raised in the motion have been fully determined and need not be further discussed.

The motion is overruled, and,

It is so ordered.

SADLER, C. J., and BRICE and BICK-LEY, JJ., concur.

THREET, J., did not participate.