185 P.2d 298

STALCUP v. RUZIC.

No. 5024.

Supreme Court of New Mexico.
Aug. 18, 1947.

Rehearing Denied Oct. 4, 1947.

Richard F. Rowley, of Clovis, for appellant.

Gore & Babbitt, of Clovis, for appellee.

LUJAN, Justice.

Appellee recovered a verdict and judgment of $15,000 against Stanton Lewis and S. S. Hamilton, a partnership, d/b/a The Clovis Transit Company, and James V. Ruzic, for injuries sustained by her while riding as a guest in an automobile owned and operated by Ruzic which collided with a bus leased and operated by the defendants Lewis and Hamilton.

James V. Ruzic, sole appellant, varying the order of presentation, contends, that (1) there was not sufficient evidence of acts or omissions on his part upon which to base a finding that appellee's injuries were intentional or caused by his heedlessness and reckless disregard of the rights of others; (2) the court erred in allowing counsel for appellee to ask each member of the jury panel on voir dire examination whether he or any member of his family owned stock or had any interest in the two named companies; and (3) the court erred in overruling his motion to stay the proceeding, thus forcing him to defend at a time when he was in Germany as a member of the United States Army.

The accident in question happened at the intersection of Seventh and Hull streets, at about 11:25 o'clock the night of February 4, 1946. Seventh street extends east and west and measures 56 feet 6 inches from curb to curb. Its center is paved 18 feet in width. On either side of the paved portion of the street lie four feet of oil surfacing and the rest up to the curb is dirt or caliche. It represents an extension through the City of Clovis of a federal highway known as Highway No. 60, which normally carries heavy traffic, especially between the business section of the city and the Army Air Base then nearby, lying to the west thereof. The area where the accident occurred was both business and residential in its makeup, each side of the highway being flanked with buildings consisting of residences, stores, tourist courts and gasoline stations. Hull street extends north and south and measures 30 feet from curb to curb.

At the time of the collision, appellant was driving his eight cylinder 1940 Oldsmobile sedan in an easterly direction on Seventh street, having with him at the time Merle Clements, sitting in the front seat, as also Lt. Frank Schooley and Theresa Stalcup, occupying the back seat. At the same time and on the same street, one Darlene Athey was driving codefendants' city bus, with three passengers aboard, in a westerly direction. The collision was caused by the left side of appellant's car catching the left front end of the city bus, causing the car to spin around and finally come to a stop against the curb. The headlights of both vehicles were burning. The driver of each vehicle saw the other approaching approximately three blocks away, and kept

an eye on the other to the point of collision. They were fully aware of the presence of each other on the street for an appreciable time prior to the impact.

Appellant entered the city limits traveling at a high rate of speed, ranging between 65 and 90 miles per hour, in violation of both city and statutory speed laws. When within three blocks of it, he observed a city bus approaching from the opposite direction. Within 200 feet of same, the appellant applied his brakes, as the bus driver momentarily, as it seemed to him, entered his lane of traffic. The appellant released his brakes almost as soon as applied, believing himself to have clear passage, and still continued at the same high and dangerous rate of speed. When within about 30 or 40 feet of the bus, he again applied his brakes, suddenly, and collided with it, having thought it to be once more swerving into his lane of traffc as he testified. Actually the bus had already stopped a mere foot across the center line of the highway preliminary to executing a left-hand turn into Hull street. Testimony as to position of the *bus on coming to rest after the collision,* based on measurements made shortly thereafter, placing it 6 feet 10 inches across the center line of the street and in appellant's lane of traffic, and slightly over 33 feet east of the east boundary of Hull street, or about 48 feet from center of the intersection, does not contradict unimpeached testimony of the bus driver that the bus was at a dead stop only one foot over the center line *at the moment of impact;* nor her testimony and that of still another that it had reached the intersection, before the collision occurred. The appellant's car was skidding as shown by physical marks on the pavement, from a point 97 feet west of point of collision to a point 90 feet east thereof.

The foregoing ultimate facts all are within the verdict of the jury as permissible inferences deducible from the evidence.

There being substantial evidence in the record to support the finding of the jury that the appellee's injuries were proximately caused by the act of the appellant in operating his automobile in a heedless and reckless disregard for the safety of his passengers, under our well-established rule, we will not disturb the verdict. This disposes of appellant's first claim of error.

We come now to a consideration of the second question. In the examination of prospective jurors on voir dire, in cases of this kind, counsel may, if acting in good faith, question them with respect to their or their family's possible interest in, or connection with, any particular insurance company, for the purpose of ascertaining their fitness to serve, and of enabling counsel to exercise his right of peremptory challenge, though plainly such a line of questioning must necessarily tend to lead

to the belief that the defendant is insured and that the company referred to is defendant's insurer.

■ The matter rests largely within the sound discretion of the trial court. If, under the circumstances of the case, the question is calculated to prejudice the defendant before the jury, the trial court should exercise its discretionary power so as to remove the prejudice and insure a fair trial. This must be left largely to the presiding judge, who has ample power to prevent injustices to the parties litigating before him, and whose power should be used soundly for this purpose. His ruling will not be disturbed unless there has been an abuse of such discretion and such does not appear. See Olguin .v. Thygesen, 47 N.M. 377, 143 P.2d 585.

■ The last claim of error is based on the court's denial of appellant's motion to stay proceedings. The motion was filed under the Soldiers' and Sailors' Civil Relief Act of 1940, § 201, 50 U.S.C.A.Appendix, § 521, and prayed that "all further proceedings be * * * stayed for the period of his military service * * * and for three months thereafter * * *." The cited section of the above Act provides that: "At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter *may, in the discretion of the court* in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in the Act, *unless, in the opinion of the court,* the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service." (Italic ours.)

On this issue the record discloses the following: On February 23, 1946, the case was filed. On March 1, 1946, a motion was filed by appellee to take the depositions of appellant. On the same day the Court signed and filed an order granting said motion and set March 6, 1946, as the day for taking the same. Appellant was represented by his attorney at this hearing. During the trial they were introduced and read to the jury. On March 25, 1946, appellant through his attorney filed a motion to make more definite and certain. On August 5, 1946, appellee filed his bill of particulars. On August 16, 1946, appellant filed his answer. On August 10, 1946, the court set the case for trial as of September 11, 1946. On September 7, 1946, approximately six months after the filing of the case, appellant filed his motion for stay of proceedings. Appellant was within the jurisdiction of the court from February 23, 1946 until August 23, 1946, when he left the United States.

The motion did not show that any attempt had been made to procure leave for appellant so that he could be present at the trial. In fact, any showing of diligence on his part is wholly lacking, and we cannot say that the trial judge abused the discretion lodged in him by the Soldiers' and Sailors' Relief Act, supra. It therefore follows that this assignment is without merit. Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 1231, 57 L.Ed. 1587. See also Johnson v. Johnson, 59 Cal.App.2d 375, 139 P.2d 33; Koons v. Nelson, 113 Colo. 574, 160 P.2d 367; Miller v. Miller, 26 Cal. 2d 119, 156 P.2d 931; People ex rel. Flanders v. Neary, 113 Colo. 12, 154 P.2d 48.

Finding no error, the judgment will be affirmed and the cause remanded, with direction to the District Court to enter judgment against the surety on appellant's supersedeas bond, and to enforce the same. It is so ordered.

SADLER and McGHEE, JJ., concur.

COMPTON, J., having tried the case below did not participate.

BRICE, C. J., did not participate.

HENSLEY, District Judge (dissenting).

I cannot concur in the foregoing opinion and my statement of dissent follows:

The first proposition relied upon by counsel for appellant is that the court erred in allowing counsel for plaintiff-appellee to ask each member of the jury panel on voir dire examination certain questions relative to insurance companies.

The case at hand discloses that counsel for appellee asked each juror individually, (a) "Do you have any interest or stock in the Continental Casualty Company?" (b) "Do any immediate members of your family have any stock in or direct interest in the Continental Casualty Company?" (c) "Do you have any interest, or stock, in the State Automobile Insurance Company of Columbus, Ohio?" and (d) "Do any members of your family have any interest or stock in the State Automobile Mutual Insurance Company of Columbus, Ohio?" Each prospective juror answered each question in the negative. Thereafter each question just quoted was again asked by counsel for appellee to the jury panel collectively. It will be remembered that the appellant, James V. Ruzic, then in military service, was from Cleveland, Ohio, as was disclosed by the plaintiff in the deposition of the defendant James V. Ruzic. The appellant objected to each question at the time and the trial court overruled the objection.

The primary objects of voir dire examination are to secure a fair trial and a just verdict. The examiners are entitled to know if the jury is qualified, that is, if the jury is free from prejudice or bias. In Faber v. C. Reiss Coal Company, 124 Wis.

554, 102 N.W. 1049, it was said that such examination is proper so long as it is conducted in an honest effort to discover the status of mind of jurors regarding the matter at hand or any matter likely to unduly influence them. In other words, the latitude is granted for the protection of the rights of litigants to an unbiased jury.

The almost universal rule permits the plaintiff to interrogate jurors on voir dire as to their, or their relatives', possible connection with or interest in liability insurance companies in actions for personal injury and death actions, where the questions are propounded in good faith. The general rule was followed by this court in Olguin v. Thygesen, 47 N.M. 377, 143 P.2d 585. To the rule just noted there are two conditions attached; first, the amount of damages awarded by the jury must not be disproportionate to that which the evidence reasonably justifies and, second, the defendant's liability under the evidence must not be a close question. To these conditions this court has given approval in the case just cited. It will be noted that both of these conditions will not be apparent to the trial judge at the time of the voir dire examination and consequently counsel must proceed with caution lest an unbiased jury, by reason of the suggestion of the presence of an insurance company, thereby become prejudiced. To further relax the rules of voir dire examination by the medium of apparent good faith will only circumvent the rules of evidence that render testimony relative to the presence of an insurance company inadmissible.

The formula indicated in Avery v. Collins, 171 Miss. 636, 157 So. 695, 158 So. 552, and noted in 105 A.L.R. 1333, if followed, would for all practical purposes preclude the question of good faith from arising, if there was in fact an insurance company directly involved. In that case it was pointed out that the proper means of ascertaining the qualifications of a tendered juror in respect to his insurance connection, is to ask him what business he is engaged in and if he answers, for instance, that he is a farmer, the further precautionary question may be put to him of whether he has any other business or business connections. If he answers he has not, that usually ought to end the privilege as far as inquiry into his insurance connections is concerned. If that method should not be sufficient in a given case then counsel might go further, if the trial judge is first satisfied that a necessity therefor exists. By following such a standard counsel for plaintiff could generally secure an unbiased jury. On the other hand, the formulating, propounding, and constantly repeating questions relative to insurance companies will result only in leading the jury to believe that an insurance company, and not the defendant, will pay for the damages, a belief that may or may not be true. This would be greatly prejudicial to a defendant. The court

should guard the substantive rights of both parties litigant. One party should not be permitted to use as a weapon against another that which is furnished him as a shield. The examination of prospective jurors on voir dire by the plaintiff in the instant case was improper and prejudicial. The trial court, in permitting the repetition of questions over and over again to each juror individually, and finally to the jury panel collectively, naming specific companies in each question, abused its discretion.

The second assignment of error relied upon by appellant is that the evidence was insufficient to establish that plaintiff's injuries were intentional, or caused by the appellant's heedlessness or his reckless disregard of the rights of others.

To analyze this proposition requires an examination of Section 68-1001 of the New Mexico Statutes, 1941 Anno., being the so-called "Guest Statute" and in words as follows: "No person transported by the owner or operator of a motor vehicle as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or reckless disregard of the rights of others."

The undisputed evidence discloses that the collision occurred on appellant's side of the street. The statement of facts recited in the opinion, in that "actually the bus had already stopped a mere foot across the center line of the highway preliminary to executing a left-hand turn into Hull street * * *" are not concurred in by the writer. The uncontradicted proof submitted by appellee discloses that the bus was actually six feet and ten inches across the center line of the street and in appellant's lane of traffic, by actual measurement. Further, the driver of the bus, a witness called by appellee, stated that the bus had stopped and that it did not go forward or backward after the collision, but that it might have moved some to the south. The uncontradicted proof further shows that the point of impact occurred 33 feet and 5 inches east of the east boundary of Hull street, or a total of 48 feet and 5 inches from the center of the intersection of Hull street and Seventh street. A left-hand turn could not be made before reaching the intersection. The appellant was in his proper lane of traffic. The side of appellant's vehicle came in contact with the left front corner of a bus owned by a codefendant. The vehicle of the codefendant was not in its proper lane of traffic. The only evidence against the appellant was on the question of speed. This evidence was widely divergent and the witnesses who testified as to

appellant's excessive speed admittedly base their estimates on the fact that they watched the approaching headlights of appellant's vehicle as the witnesses rode in a lighted bus owned by a codefendant. The weight that this estimate should be given is problematical. That it lacks probative force is shown in Andrews v. Armour & Co. et al., 119 Conn. 651, 178 A. 359, at page 360, and Thrash v. Continental Casualty Company, La.App., 6 So.2d 75. The plaintiff and another occupant of appellant's vehicle testified that nothing about appellant's driving or speed attracted their attention.

Assuming for the moment that the apellant was speeding, that alone is not sufficient. Vanderkruik v. Mitchell, 118 Conn. 625, 173 A. 900, 901; McDonald v. Dodge, 231 Iowa 325, 1 N.W.2d 280; McLeod v. Dutton, 13 Cal.App.2d 545, 57 P.2d 189; Hart v. Hinkley et al., 215 Iowa 915, 247 N.W. 258; Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571. All being cases involving "Guest Statutes." Hence, the conclusion is unavoidable that the only evidence in support of the verdict against the appellant was on the question of speed and that evidence lacked probative force. Finally, even if excessive speed had been admitted, it would not have met the requirements of the statute quoted. In view of the foregoing the trial court should have sustained appellant's motion for a directed verdict.

The third assignment of error raised by appellant is without merit.

### On Motion for Rehearing

PER CURIAM.

The appeal is before the court on motion for rehearing filed by the appellant. Examination and consideration thereof satisfy us that all questions argued in appellant's brief have been passed upon and correctly resolved in the opinion heretofore filed, with one exception. Counsel reminds us that there was no supersedeas bond filed in connection with this appeal. Hence, the direction that upon remand judgment be entered against the surety on appellant's supersedeas bond is erroneous and the direction as to the entry of judgment against the surety on a supersedeas bond contained in the original opinion should be withdrawn. The judgment will simply stand affirmed. Except for this correction, the opinion as written and filed remains unchanged and the motion for rehearing is denied.

It is so ordered.

BRICE, C. J., and COMPTON, J., did not participate.

HENSLEY, D. J., dissents.